Filed 1/12/16  P. v. Ford CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062452 |
| v. | (Super.Ct.No. RIF1400059) |
| TERRANCE DEON FORD, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge.
Affirmed.

Anthony J. Dain, under appointment by the Court of Appeal, for Defendant and
Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney
General, Julie L. Garland, Assistant Attorney General, and Peter Quon, Jr., and
Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Terrance Deon Ford[1] of misdemeanor domestic battery (Pen. Code,[2] § 243, subd. (e)(1); count 1[3]), assault with force likely to produce great bodily injury (§ 245, subd. (a)(4); count 2), and attempting to dissuade a crime victim from reporting a crime (§ 136.1, subd. (b)(1); count 4).[4] After a separate bench trial, the trial court found true allegations of three prior serious felony convictions and three prior strike convictions. Defendant was sentenced to an aggregate prison term of 40 years to life, consisting of 25 years to life with respect to count 4, plus three consecutive five-year terms for the serious felony conviction priors.

On appeal, defendant raises two claims of error. First, he contends his conviction on count 4 should be reversed because the trial court failed to give a unanimity instruction for that crime. Second, he argues that, to the extent the count 4 conviction is not reversed, the case nevertheless should be remanded for resentencing because the trial court misunderstood the scope of its sentencing discretion when it denied defendant's

---

[1] Defendant's middle name is spelled "Dean" at various points in the record, including his own briefing on appeal. We will use Terrance Deon Ford, because it is shown as "Deon" when he spelled his name at trial, in the abstracts of judgment from his prior conviction in 1988, in his signature on a fingerprint card, and in his Notice of Appeal.

[2] Further undesignated statutory references are to the Penal Code.

[3] Count 1 had been charged as felony spousal abuse (§ 273.5, subd. (a)), but the jury found defendant guilty only of the lesser included offense.

[4] The jury failed to reach a verdict on an additional count of making a criminal threat (§ 422 (count 3)), and that count was subsequently dismissed in the interest of justice.

2

motion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) to strike his prior convictions.  We affirm.

## I.  FACTS AND PROCEDURAL BACKGROUND

The prosecution presented evidence—principally through the testimony of the victim, a cohabitant and the mother of his child—that on the evening of October 20, 2013, defendant became violent during an argument at their residence.  Among other things, the victim testified that defendant squeezed her head with his arm using such force that she "felt [her] teeth shifting."  Later, defendant bit victim's finger so hard that she initially thought he had bitten the finger off and looked for it on the floor.  Defendant also "clubbed" the victim in the side of the head with a closed fist, and slammed the back of her head into a wall hard enough to leave a hole in the wall.

The victim further testified that during the altercation she told defendant that she was going to call the police.  In response, defendant said that he was leaving, and told the victim not to "block [his] pathway" or he would "[f---] [her] up."  Defendant indeed did leave the apartment, but called the victim outside shortly thereafter, ostensibly to get her things out of his car.  The victim did so, believing that defendant would not do anything to her in public, and worried that he would destroy her belongings.  Outside, defendant adopted a conciliatory tone, apologizing, promising better behavior in the future, and inviting victim to walk with him to go get a beer.  The victim told defendant "you know you're going to get in trouble.  I don't want to call the police, but you can't keep putting your hands on me."  Defendant and victim walked together for a short distance, but when they reached a dark, secluded area, defendant looked around and then said "you F'ed up

3

now, cuz," and "I'm going to f you up now, cuz." At that point, the victim ran away, toward a security guard who was sitting in a car. Defendant left the area when the guard got out of the car, running to his own car and driving away.

A couple of days later, according to the victim, she spoke to defendant by telephone, when he called her. Defendant was initially apologetic, and then asked whether she had called the police. When the victim told defendant that she had, he responded "[Y]ou going to make an M. F. end up killing you, cuz."

At trial, the prosecution also presented evidence—again, through the testimony of the victim—of three prior, uncharged incidents of domestic violence by defendant against the victim; one in June 2013, another in July 2013, and a third in August 2013.

Defendant's jury trial commenced on September 29, 2014, and the jury returned its verdicts on October 6, 2014. The bench trial on defendant's priors was held on October 10, 2014, and the court issued its rulings on the same date.

On November 14, 2014, the trial court heard oral argument on defendant's *Romero* motion. Defendant's prior strike convictions included a 1988 robbery conviction, and two assault convictions in 1990.[5] The robbery conviction arose from defendant's participation in the robbery of two victims at gunpoint. One of the 1990 assault convictions was based on an incident on July 13, 1989, when defendant assaulted a

---

[5] We note that defendant benefitted from the prosecution's decision to charge him only with three prior strike convictions; it appears from the record defendant was actually convicted of two counts of robbery in 1988. Defendant therefore apparently could have been charged with four prior serious felony and strike convictions, though only three were alleged by the prosecution.

victim without provocation, using brass knuckles, in addition to feet and fists, and continuing to strike the victim while he was dazed and defenseless. This assault left the victim with a severely broken jaw, seven chipped teeth, and a jaw wired shut for three months. The second 1990 assault conviction was based on events of September 23, 1989, during which defendant approached two victims who were sitting in a car. Defendant punched one victim in the head while he was in the car, and then struck him again several times when he got out of the car. The second victim exited the car to try to break up the fight; defendant struck him in the head, too, and directed his companions to join in. The second victim was beaten unconscious, but defendant continued assaulting him. At one point, the defendant climbed on the bumper of a vehicle and jumped onto the second victim's head. According to the People's opposition to defendant's *Romero* motion, the second victim was left in a coma for three months. In addition to these strike offenses, defendant was convicted in 2001 of transporting narcotics for sale (Health & Saf. Code, § 11379, subd. b). As the trial court observed, as a result of these convictions, there has been no significant stretch of time during defendant's adult life that he has been out of custody.[6] Instead, each time he has been released after serving time on a previous offense, he has been quickly returned to prison, usually as the result of a new felony conviction. The trial court stated that it "truly . . . looked for reasons to exercise [its] discretion" to grant the motion, but found none, and denied the *Romero* motion on that basis.

---

[6] Defendant turned 18 in 1988.

On the same date, after denying defendant's *Romero* motion, the trial court imposed sentence. The sentence imposed consisted of 25 years to life with respect to count 4 under the Three Strikes Law; a concurrent six-year term for count 2, stayed pursuant to section 654; and a concurrent 365-day sentence for count 1. The trial court also gave defendant five years for each of the three serious felony priors, but stayed those sentences, citing "the interest of justice given the fact that they're the same priors used to enhance Count 4 for the life sentence." On January 9, 2015, however, at the request of the People, the trial court reconsidered its previous order. The trial court concluded that, pursuant to section 1385, it did not have the authority to stay or run concurrent the terms on the three serious felony priors. On that basis, the trial court vacated its previous order, and imposed sentence again, this time without the stay on the sentences for the priors, for a total aggregate sentence of 40 years to life.[7]

## II. DISCUSSION

**A. No Unanimity Instruction Was Required with Respect to Count 4.**

Defendant contends that the trial court erred by not instructing the jury on unanimity with respect to count 4, arguing that evidence was presented of five different instances of defendant attempting to dissuade the victim from reporting a crime, any of which could have provided the factual basis for that conviction.[8] Specifically, defendant points to the three uncharged instances of domestic violence, the events of October 20,

---

[7] Additional details are discussed below, as necessary to address defendant's claims of error.

[8] The jury was instructed on unanimity with respect to count 1.

6

2013, and the telephone discussion between defendant and the victim several days later. We find no error.

"'It is fundamental that a criminal conviction requires a unanimous jury verdict [citation].'" (*People v. Thompson* (1995) 36 Cal.App.4th 843, 850.) "Where the jury receives evidence of more than one factual basis for a conviction, the prosecution must select one act to prove the offense, or the court must instruct the jury that it must unanimously agree on one particular act as the offense." (*People v. Jantz* (2006) 137 Cal.App.4th 1283, 1292.) Where the prosecution makes an election of one act to prove the offense, that election must be "clearly communicated to the jury." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1539.) "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.'" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)

Here, the prosecutor clearly communicated to the jury that the charged offense of dissuading a witness was based on the events late in the evening on October 20, 2013. During closing argument, the prosecutor told the jury that count 4 was based on defendant's threats made during that altercation. The prosecutor stated: "This is before he slams her head in the wall. This is after the clubbing and after he wraps his hand around her face cutting her lip . . . She's yelling for help. . . . She says I'm calling the police and he says 'I'm going to fuck you up.' That is dissuading a witness."

The prosecution also explicitly distinguished for the jury defendant's efforts to dissuade the victim from calling the police on October 20, 2013, from other alleged

7

criminal threats that were the basis for count 3, including threats made by telephone several days after the October 20, 2013 altercation. As the prosecutor explained to the jury, "[d]issuading, the Count 4, it's acts or words . . . to try and stop [the victim] from calling the police," whereas, a criminal threat for count 3 "doesn't have to be connected to anything." The victim testified that she told defendant she had already talked to the police before defendant made additional threats during their telephone conversation a few days after October 20, 2013. And the evidence suggests only that those additional threats were a reaction to past events—there is nothing in evidence to suggest defendant was attempting to prevent the victim from making a further report to police, as defendant speculates in briefing on appeal.

Of course, section 136.1 is broad enough to cover a defendant's attempt to dissuade a witness from participating in trial or other proceedings that may occur after a police report is filed. (See § 136.1, subds. (a)(1), (2).) It does not necessarily follow, therefore, as a general matter, that threats made after a police report already has been filed could not result in a violation of section 136.1. In this case, however, the jury's instructions with respect to count 4 limited the definition of the offense to an attempt to dissuade the victim "from making a report that she was a victim of the crimes spousal abuse and assault." Additionally, the jury was correctly instructed with respect to the proper uses of evidence of uncharged conduct, and told that the three incidents prior to October 20, 2013, constituted uncharged conduct. (See *People v. Diaz* (1987) 195 Cal.App.3d 1375, 1382 [limiting instruction "preserves the requirement that the jury be

unanimous because the use of uncharged acts is carefully restricted by the instruction," and a jury is presumed to follow instructions given to it.].)

On these facts, there was no danger of the jury convicting defendant on count 4 even though there was no single offense that all the jurors agreed defendant committed. The trial court therefore had no duty to provide the jury with an instruction on unanimity with respect to that count.

Defendant's arguments to the contrary notwithstanding, *People v. Melhado* (1998) 60 Cal.App.4th 1529 (*Melhado*) is distinguishable from this case. In *Melhado*, the prosecutor's closing argument was ambiguous, mentioning several different acts that could have served as the charged offense of making a terrorist threat, though arguably emphasizing only one of them, while downplaying the others. (*Id.* at pp. 1535-1536.) The court of appeal found on that basis that the prosecutor had not clearly informed the jurors of his election, and the combination of the prosecutor's argument and the instructions provided did not adequately inform the jurors, so it was error for the trial court to have failed to give a unanimity instruction. (*Id.* at p. 1536.)

In contrast, here, the prosecution was not ambiguous about which events were the basis of the various charges, specifically pointing to the events of October 20, 2013, as the basis for count 4. The jury was instructed that the evidence of three prior incidents of domestic violence was evidence of uncharged conduct, not the basis of any current charges. Further, evidence of a threat made after a defendant has been told police already have been called may well be evidence of a criminal threat, but is not evidence of an attempt to dissuade the victim from reporting a crime, at least under the definition of the

9

offense given to this jury, and given the evidence that defendant had been told the crime had already been reported.  Thus, even if the prosecution did not say in so many words that it was "electing" to base count 4 on the events of October 20, 2013, on the present record there was no room for the sort of jury confusion that unanimity instructions are designed to prevent.

In short, we find no error with respect to the jury's instructions, or lack thereof, on unanimity.

**B.  The Trial Court Did Not, Ultimately, Misunderstand the Scope of Its Sentencing Discretion.**

Defendant contends that the trial court misunderstood the scope of its sentencing discretion in ruling on defendant's *Romero* motion and imposing sentence, based on the trial court's initial, erroneous stay of the three five-year sentences imposed for his serious felony priors, and comments made by the trial court during sentencing.  Defendant suggests the trial court, having determined that serious felony prior sentences could not be stayed or run concurrent, could and should have reconsidered its ruling with respect to the *Romero* motion and reached "an actual, aggregate sentence in the neighborhood of 25 years" by an alternate route, specifically, by granting the *Romero* motion, sentencing defendant as a second striker on count 4, running the sentence on count 2 consecutive to that sentence, and imposing the three five-year serious felony priors consecutively.  We find no error.

Section 1385, subdivision (a) authorizes a trial court to strike prior conviction allegations and/or findings in cases brought under the Three Strikes law.  (*Romero*, *supra*,

10

13 Cal.4th at pp. 529-530.) However, a "court's discretion to strike prior felony conviction allegations in furtherance of justice is limited." (*Id.* at p. 530.) "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code section 1385[, subdivision] (a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) A trial court abuses its discretion in failing to strike a prior felony conviction allegation only in the "extraordinary case . . . where the relevant factors described in *Williams*, *supra*, 17 Cal.4th 148, manifestly support the striking of a prior conviction and no reasonable minds could differ . . . ." (*People v. Carmony* (2004) 33 Cal.4th 367, 376.)

The record reveals the trial court was fully informed of and considered the nature and circumstances of defendant's present felony and his prior serious felony convictions, as well as the particulars of his background, character, and prospects. As the trial court noted, defendant's strike convictions involved extremely violent conduct injuring four different victims, including serious injuries to several of them. Furthermore, defendant had repeatedly demonstrated an inability to refrain from committing additional felonies in the brief interludes between his long periods of incarceration. This is hardly the

11

extraordinary case where the relevant factors manifestly support the striking of a prior conviction. To the contrary, the record strongly supports the trial court's conclusion that defendant falls squarely within the spirit of the Three Strikes law.

Defendant argues that the trial court's conclusions regarding the nature and circumstances of his current offense were premised on a misunderstanding of its sentencing discretion, in that the court believed it could stay the three five-year sentences for defendant's serious felony priors, resulting in an aggregate sentence of 25 years to life. He characterizes the trial court as having found it to be "unfair" to impose a sentence greater than that. We disagree both with defendant's characterization of the record, and his understanding of the trial court's discretion. The court expressed willingness to exercise its discretion to impose the lightest sentence possible within the confines of the Three Strikes law, emphasizing that it was not "looking" to give defendant additional time, and later remarking that it found the initial sentence of 25 years to life "more than appropriate." It also initially expressed concern about *procedural* unfairness in imposing additional, separate sentences for serious felony priors based on the same convictions that resulted in enhancement of defendant's sentence for court 4. However, under the Three Strikes law, enhancements are used in "two distinct ways: to calculate the minimum term of the indeterminate life sentence and to add an additional, determinate term to be served before the indeterminate life sentence [for each prior serious felony conviction]." (*People v. Williams* (2004) 34 Cal.4th 397, 403.) Having found no basis in the record to deem defendant outside the spirit of the Three Strikes law under *Romero* and its progeny, based in particular on the violence of both his

12

current and previous offenses and his chronic recidivism, the trial court had no discretion to impose an aggregate sentence of less than the one it ultimately imposed.

*People v. Garcia* (1999) 20 Cal.4th 490 (*Garcia*), a case emphasized by defendant, does not require a different result. Defendant reads *Garcia* essentially as an open invitation for a trial court to use *Romero* motions to escape the boundaries on judicial discretion imposed by the Three Strikes laws. We do not read *Garcia* so broadly. In *Garcia*, the California Supreme Court held that a trial court sentencing a defendant under the Three Strikes law has discretion to dismiss strike allegations on a count-by-count basis. (*Id.* at p. 500.) The court explained that in exercising its discretion under *Romero* and *People v. Williams*, *supra*, 17 Cal.4th 148, the trial court must consider the nature and circumstances of the current felonies on an individualized basis, and that analysis may differ considerably from count to count. (*Garcia*, *supra*, at pp. 499-500.) Among other things, "once the trial court had sentenced defendant to a term of 30 years to life for [one count], his 'prospects' for committing future [crimes] diminished significantly," changing the *Romero* analysis with respect to other counts. (*Garcia*, *supra*, at p. 500.) This holding, however, has no application to the facts of this case.

Put another way: *Garcia* allows trial courts discretion to dismiss strike allegations on a count-by-count basis to avoid unjust stacking of multiple indeterminate terms for defendants with multiple current offenses potentially subject to enhancement under the Three Strikes law. Here, defendant was only sentenced to a single count enhanced by the Three Strikes law to an indeterminate life term, plus the required additional determinate terms for the pleaded and proven serious felony priors. *Garcia* is simply inapposite.

13

The trial court initially misunderstood the scope of its sentencing discretion, but corrected that misunderstanding, and properly imposed an aggregate sentence of 40 years to life.  As such, defendant has demonstrated no error.

## III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

MCKINSTER

J.

MILLER

J.

14